## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DUK SOOK KUHRY-HAEUSER, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 8:05CV37 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DEERE LANDSCAPES, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's motion for summary judgment (Filing No. 48), and plaintiff's brief in response to defendant's motion for summary judgment. (Filing No. 52).  Plaintiff has asserted claims for employment discrimination under the Nebraska Fair Employment Practice Act, Neb.  Rev.  Stat. § 48-1101 (NFEPA) and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000 *et seq.*

The court has carefully reviewed the pleadings, the briefs, and the evidentiary materials filed by the parties.  For the reasons explained below, the court finds and concludes that summary judgment should be granted in favor of the defendant.

### FACTUAL BACKGROUND

Plaintiff, Duk Sook Kuhry-Haeuser, began working for defendant, John Deere Landscapes, as a driver in its Omaha branch office in March 2002.  After plaintiff's direct supervisor, Omaha branch manager Mike Radick, left in February of 2003, John Deere Landscapes hired Scott Taylor as branch manager.  Plaintiff claims that in February of 2003 she expressed interest in the branch manager position to area manager John Beckham.  Plaintiff further contends that she expressed a life goal of graduating college and that Beckham suggested she could couple her studies with a career at John Deere

through the tuition reimbursement program.  Defendant states, however, that plaintiff expressed no interest in the position awarded to Taylor, stating instead, that she wanted to go back to school.  Defendant further claims that Taylor was more highly qualified for the position as plaintiff had no prior experience, and Taylor had prior experience working for electrical distribution and installation companies, and had performed satisfactorily at another John Deere Landscapes location.  Plaintiff disputes that Taylor possessed higher qualifications than herself.

During March and April of 2003 Taylor began harassing plaintiff.  Taylor told jokes about having sex; used degrading terms for women such as bitches, slut, ho; asked plaintiff if she had gotten laid at lunch one day; spoke about past relationships with his girlfriends, told former supervisor Radik that plaintiff was not available to answer the telephone then simulated slurping and moaning noises and stated that plaintiff's mouth was "full"; and grabbed himself in a suggestive manner in front of former supervisor Radick when he was picking up plaintiff at work stating that Radick could have her now because he was done with plaintiff.

On or around April 25, 2003, plaintiff complained about Taylor's behavior to Kim Chadwick, Vice President of Human Resources for John Deere Landscapes.  Chadwick informed plaintiff that she would investigate the complaint.  Chadwick's notes show that she spoke with Taylor on April 30, 2003, and confirmed that Taylor did indeed engage in some of the alleged conduct.  Chadwick wrote up a disciplinary action form dated May 1, 2003 which was signed by Taylor on May 7, 2003.  The disciplinary action form informed Taylor that failure to correct the problem may result in further disciplinary action up to and including termination.  Soon after plaintiff's report, Taylor transferred back to his original

2

branch in Missouri. Defendant states that plaintiff was instructed to use her paid leave time to avoid working with Taylor while he was waiting for this transfer to process. Plaintiff acknowledged that after she talked with Chadwick she did not have any further problems with Taylor because she was either using her paid leave time when Taylor was in the office, or other employees were at the branch and she was not alone with Taylor.

After Taylor transferred back to the Missouri branch in June 2003, the branch manager position was filled by Jose Tucker. Plaintiff applied and was considered for the branch manager position. Defendant states that Tucker was more qualified for the position as he had over ten years of industry-related experience in installation and distribution of irrigation products and also had experience in the areas of staff management, customer service, and customer retention. Defendant also states that plaintiff was having punctuality and attendance problems at the time of Tucker's hire. Plaintiff argues that the disciplinary measures taken against her were in retaliation for her report of sexual harassment against Taylor, stating that she was never cited for punctuality and attendance problems prior to her report about Taylor's behavior.

When Tucker left the branch manager position in May of 2004, John Deere hired Chris Dougherty to replace Tucker. Defendant states that plaintiff was not hired for this position because Dougherty had several years of prior experience, and plaintiff was still having attendance and punctuality problems. In July 2005 plaintiff was hired as branch manager.

In December 2003, plaintiff filed an administrative charge with the Nebraska Equal Opportunity Commission ("NEOC"). The NEOC issued a Commission Determination that the evidence was insufficient to support plaintiff's claims. Plaintiff filed this civil complaint

alleging that John Deere discriminated against her based on her sex by failing to promote her to the branch manager position in March 2003; she was sexually harassed by branch manager Scott Taylor in March-April 2003; that in retaliation for her complaints of sexual harrassment she was not promoted to branch manager in May of 2003; and in retaliation for her complaints of sexual harrassment she was unfairly written up based on attendance. On November 2, 2004 plaintiff received a Commission Determination of no reasonable cause from the NEOC.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 611 (8th Cir. 1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (quoting *Anderson*, 477 U.S. at 248).

4

**DISCUSSION**

**Title VII and Nebraska Fair Employment Practice Act Claims**

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Summary judgment may be entered in a Title VII action "if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999). "Nebraska courts look to federal decisions when construing the NFEPA because the NFEPA is patterned after Title VII." *See, e.g., Malone v. Eaton Corp.*, 187 F.3d 960, 962 n.3 (8th Cir. 1999) (sex discrimination under Title VII and NFEPA).

1.  Discrimination in Hiring

Plaintiff alleges that defendant violated Title VII of the Civil Rights Act of 1964 and NFEPA, by failing to promote her to the branch manager position in March 2003. To establish a prima facie case of discrimination in a failure-to-promote case, plaintiff must show "(1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Gentry v. Georgia-Pacific Corp.*, 250 F.3d 646, 650 (8th Cir. 2001). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502,

5

509 (1993).  If the employer succeeds in this burden of production, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was a pretext for intentional discrimination. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000). The ultimate burden of persuasion remains with the plaintiff throughout the case.

For purposes of this summary judgment motion I will assume that plaintiff has met her burden and established a prima facie case of discrimination.  The burden now shifts to the defendant to articulate a nondiscriminatory reason for plaintiff's discharge. Defendant has done so.

Defendant has articulated a nondiscriminatory reason for not promoting plaintiff, namely, Scott Taylor was more highly qualified.  Absent another reason, the court is not to sit as a super-personnel department to oversee management decisions.  *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136-37 (8th Cir. 1999).

Other than plaintiff's conclusory allegation that Taylor was not more qualified for the branch manager position, plaintiff submitted no additional evidence to show that the defendant's proffered reasons for promoting Taylor rather than plaintiff, was pretext for discrimination.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").  I have carefully reviewed the record, and I conclude that there is insufficient evidence to submit this claim to a jury.

2.  Hostile Work Environment Harassment

Next, plaintiff claims the defendant violated Title VII and NFEPA based on Taylor's sexual harassment.  Discrimination based on sex that creates a hostile or abusive working environment violates Title VII.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).   Hostile work environment harassment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Bradley v. Widnall*, 232 F.3d 626, 631 (8th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotations and citations omitted).

To establish a prima facie case of hostile work environment sexual harassment, plaintiff must demonstrate: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. *See McCowan v. St. John's Health Sys., Inc.*, 349 F.3d 540, 542 (8th Cir. 2003) (citation omitted).

The first three elements are undisputed here.  Furthermore, I need not decide whether Taylor's conduct rose to the level necessary to affect a term or condition of employment, because plaintiff did not show that her employer failed to take prompt and effective action to end the harassment.

"Once an employer becomes aware of sexual harassment, it must promptly take remedial action which is reasonably calculated to end the harassment." *Kopp v. Samaritan*

7

*Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993).   On or around April 25, 2003, plaintiff contacted Chadwick and reported the harassment.   The remedial action John Deere took was to investigate the complaint by meeting with Taylor on April 30, 2003, five days after plaintiff's report.   After Chadwick confirmed that at least some of the alleged conduct did occur, Chadwick completed a disciplinary write up for Taylor dated May 1, 2003, which Taylor signed on May 7, 2003.   In the disciplinary write up Taylor was informed that failure to correct the problem may result in further disciplinary action up to and including termination.   Defendant states that as a result of the complaint, Taylor was promptly transferred out of the Omaha office.   Plaintiff argues that the transfer was initiated by Taylor and not defendant, but even taking that as a fact for purposes of this motion, the court concludes that the action by defendant was sufficient because Taylor did ultimately leave the Omaha branch office.   Defendant then worked with plaintiff to ensure that she was not in the office alone with Taylor.   In her deposition, plaintiff acknowledged that after her complaint to Chadwick she did not experience any further harassment and was never alone with Taylor.   Plaintiff explained that prior to Taylor's transfer she would either take her paid leave time or another staff member was present when she was in the office with Taylor.

Based on this evidentiary record, defendant took prompt remedial action that actually succeeded in ending the harassment.   Therefore, plaintiff has failed to establish a prima facie case of hostile work environment sexual harassment and I will grant summary judgment in favor of defendant on this claim.

3.  Retalitory Failure to Promote to Branch Manager in June 2003[1]

Next, Plaintiff claims that in retaliation for her complaint of sexual harassment, defendant did not promote her to branch manager in June 2003.  To establish a  prima facie case of retaliation under Title VII, the plaintiff must show that she "engaged in protected conduct, that she suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct."  *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004).

Here plaintiff engaged in protected conduct when she reported the sexual harassment by Taylor.  Moreover, both parties acknowledge that she applied for, and was not promoted, to the branch manager position in June 2003, and thus, has suffered an adverse employment action.

Therefore, the focus is on whether the plaintiff has established the third prong of the prima facie case, a causal connection between the protected conduct and the adverse employment action. The plaintiff's burden in resisting summary judgment is to point to

---

[1]Plaintiff also claims defendant retaliated against her by disciplining her for punctuality and attendance problems.  Each action claimed to be retaliatory must be sufficiently adverse to have created a material change in the employment, "such as a change in salary, benefits, or responsibilities." *LaCroix v. Sears*, *Roebuck, and Co.*, 240 F.3d 688, 691 (8th Cir. 2001).  Not everything that makes an employee unhappy constitutes an actionable adverse employment action. *Id.*  A negative employment review, for example, is actionable only if the employer subsequently uses the evaluation as a basis to alter in a detrimental way the terms or conditions of the recipient's employment. *Spears v. Mo. Dep't of Corr. & Human Resources*, 210 F.3d 850, 854 (8th Cir. 2000). Minor changes in duties or working conditions that do not result in materially significant disadvantage "do not meet the standard of an adverse employment action ····" *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016-17 (8th Cir. 1999).  Plaintiff's complaints about these disciplinary write ups do not rise to the level as to alter or change plaintiff's employment conditions on their own, but will be considered as evidence in the failure to promote claims.

sufficient evidence on which a judge or jury could find, by a preponderance of the evidence, that an illegal criterion constituted the motivating factor, or one of the motivating factors, for the challenged employment decisions. *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004). Here, plaintiff's evidence consists of tape recorded conversations with two Area Managers that she alleges establish that plaintiff was unfairly targeted for disciplinary action for punctuality and attendance.[2] These conversations occurred in June of 2004 and September of 2005 well after the decision to hire Jose Tucker and do not appear to have any connection with the decision to hire Jose Tucker rather than plaintiff.

Plaintiff's only other evidence is to point to the temporal connection between her report of harassment and the hiring of Jose Tucker. However, more than a temporal connection between an employee's protected conduct and the adverse employment action is required to create a genuine factual issue on causation. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999). Here, plaintiff was interviewed and considered for the position, and the candidate hired was highly qualified for the position. In these circumstances, the temporal connection between her complaint of harassment and defendant's failure to promote her to branch manager alone is not sufficient evidence on which a judge or jury could find, by a preponderance of the evidence, that an illegal criterion constituted the motivating factor, or one of the motivating factors, for the challenged employment decisions.

---

[2]Defendant challenges the use of these tape recordings as evidentiary violations. Because the court concludes they are not probative of plaintiff's claims it is not necessary to make a decision on the evidentiary issues.

10

Moreover, Defendant has articulated a nondiscriminatory reason for not promoting plaintiff, namely, Jose Tucker was more highly qualified. Plaintiff submitted no additional evidence to show that the defendant's proffered reasons for promoting Tucker rather than plaintiff was pretext for discrimination. Consequently, I shall grant the motion for summary judgment on this claim.

### 4.  Retaliation 2004 Branch Manager Hiring

Finally, plaintiff argues that defendant retaliated against her in May of 2004 when it failed to promote her to the branch manager position. Defendant argues that plaintiff waived this claim because she did not raise it in her NEOC charge.

Administrative remedies are exhausted by the timely filing of a charge and the receipt of a right-to-sue letter. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). The completion of that two-step process constitutes exhaustion only as to those allegations set forth in the NEOC charge and those claims that are reasonably related to such allegations. *See id.* ("A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC"). A plaintiff may not make a conclusory charge of discrimination and then file suit on whatever facts or legal theory the plaintiff may decide upon. *Faibisch v. University of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002).

In plaintiff's charge of discrimination with the NEOC she clearly alleges discrimination based on defendant's failure to promote her to branch manager in March of 2003; Scott Taylor's harassment of plaintiff; and defendant's failure to promote her to branch manager in June of 2003. Plaintiff did not, however, raise the issue of defendant's

11

failure to promote her to the branch manager position in 2004.  Therefore, because plaintiff failed to include this allegation in her administrative charge, and based on the face of the NEOC Commission Determination the NEOC did not address this issue, she failed to exhaust her administrative remedies on this claim and the court will grant summary judgment in favor of defendant.

IT IS ORDERED:


    1.   Defendant's Motion for Summary Judgment (Filing No. 48) is granted in its entirety;

    2.   Pursuant to Fed. R. Civ. P. 58, Judgment will be entered contemporaneously in accordance with this Memorandum and Order;

    3.   The clerk of court is directed to mail a copy of this Memorandum and Order to plaintiff at her last-known address.


November 3, 2006.          BY THE COURT:

                                  s/ *Richard G. Kopf*
                                  United States District Judge